IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DINERO CORP.,

       Plaintiff,

vs.                                                      No. 09-CV-1014-MV/KBM

AUSTIN CRUDE HOLDING COMPANY,
LLC, DONALD E. HIGGINS, VERNON K.
PATTERSON, FRED SAMS and ROYCE L.
VERNON

       Defendants/Third Party Plaintiffs

vs.

LANCE J. THAYER, BLUEPRINT FINANCIAL
MARKETING, LLC, d/b/a Guidance Financial Group,
MK ASSOCIATES, Inc., a foreign corporation,
MICHAEL KRASNERMAN, SHARON L. MARCHIOL,
LISA GROSS ARNOLD, and INSTITUTIONAL
MARKETING CONCEPTS, Inc., a foreign corporation

       Third Party Defendants

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Third Party Defendants' Motion to Dismiss

Third Party Complaint [Doc. 52].  The Court has reviewed the Motion, Third Party Plaintiffs'

Response [Doc. 57], Third Party Defendants' Reply [Doc. 64], the relevant law, and being

otherwise fully advised of the premises, **FINDS** that the Motion should be **GRANTED IN**

**PART AND DENIED IN PART** for the reasons stated herein.  With respect to those claims the

Court dismisses today, Plaintiffs shall have **LEAVE TO AMEND** their complaint as instructed

herein within **sixty (60) days** of entry of this order.

1

**BACKGROUND**

On October 23, 2009, Plaintiff Dinero Corporation filed a Complaint [Doc. 1] against Austin Crude Holding Company, LLC, Donald E. Higgins, Vernon K. Patterson, Fred Sams and Royce L. Vernon.  In its Complaint, Plaintiff Dinero alleged that Defendants Higgins, Patterson, Sams, and Vernon formed the limited liability company of Austin Crude which served as a "shell entity" under which the individual defendants purchased life insurance policies.  In summary, Plaintiff Dinero alleged that Defendants Higgins, Patterson, Sams, and Vernon purchased four insurance policies on their lives and induced Dinero to loan them capital through various misrepresentations.  According to Plaintiff Dinero, Defendant Austin Crude has carried on no business since its formation, and it was formed for the purpose of speculating on life insurance policies at Plaintiff Dinero's expense.  Plaintiff Dinero alleges claims for breach of contract, fraudulent misrepresentation, negligent misrepresentation, indemnity, fraudulent transfer, unjust enrichment, piercing of company veil and foreclosure.

On June 9, 2010, Defendants/Third Party Plaintiffs Austin Crude, Higgins, Patterson, Sams and Vernon (hereafter collectively referred to as "Plaintiffs") filed the instant Third Party Complaint against Third Party Defendants Lance J. Thayer, Blueprint Financial Marketing, LLC, d/b/a Guidance Financial Group, MK Associates, Inc., Michael Krasnerman, Sharon L. Marchiol, Lisa Gross Arnold, and Institutional Marketing Concepts, Inc.  Plaintiffs allege claims for breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duties, negligence, negligent misrepresentation, actual and constructive fraud and deceit, unfair trade and insurance practices, civil conspiracy, unjust enrichment, imposition of constructive trust and/or disgorgement, and promissory estoppel.

2

## LEGAL STANDARD

Pursuant to the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). This Court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006).

To pass muster under Rule 12(b)(6), a complaint need not recite detailed factual allegations, but a plaintiff must set forth the grounds of his or her entitlement to relief beyond "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citation omitted). A plaintiff's "allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Pursuant to *Twombly*, a plaintiff must "nudge his claims across the line from conceivable to plausible" in order to survive a motion to dismiss. *Twombly*, 550 U.S. at 570. Thus, "the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis removed).

## PLAINTIFFS' GENERAL ALLEGATIONS

The Third Party Complaint alleges that Third Party Defendants took advantage of Plaintiffs in a predatory lending scheme and convinced them to purchase unstable life insurance policies without adequately warning them of the risks involved.  According to Plaintiffs, Third Party Defendants represented that following the transactions, they would promptly sell the policies on a secondary market for profit, which would enable Austin Crude to develop oil and gas leases in which it was acquiring interests.  Those defendants not parties to the instant motion are alleged to be insurance agents and corporations serving as those agents' alter egos.  Plaintiffs allege that Defendants MK Associates and Michael Krasnerman (who filed the instant motion) are, respectively, an insurance sales corporation and its president.

According to Plaintiffs, in 2005 the individual plaintiffs began engaging in the oil and gas business.  They formed Austin Crude along with one other individual, John Brown, who possessed an interest in oil and gas leases in Louisiana.  Through Austin Crude's formation, Mr. Brown assigned his interests in the leases to the individual plaintiffs, who hoped to obtain capital to develop the leases and drill more wells.  Plaintiffs met with Third Party Defendants Lance Thayer and Lisa Gross Arnold, who told them that they qualified for a program whereby they could purchase life insurance policies and promptly sell them for cash, which they could invest in the leases.  Thayer and Gross Arnold recommended that Plaintiffs purchase insurance policies with death benefits of $20 million, for a total investment by Austin Crude of $80 million. Thayer and Gross Arnold, for themselves and on behalf of Third Party Defendants Sharon Marchiol and Institutional Marketing Concepts ("IMC"),  would then sell the policies and Plaintiffs could invest the proceeds in their leases.  Gross Arnold "made arrangements" with Third Party Defendants Michael Krasnerman ("Krasnerman") and MK Associates ("MK") to

4

obtain a premium finance loan to pay the initial premiums for the policies.  Doc. 48 at 8-9.

Gross Arnold, acting for herself and on behalf of Marchiol and IMC, negotiated a loan with an

"exorbitant interest rate" without Plaintiffs' authority and did not properly disclose the terms of

the loan to Plaintiffs.  *Id*. at 9.  The terms of the transaction included commissions in amounts

unknown to Plaintiffs that would become payable to Third Party Defendants.  Plaintiffs allege

that Thayer and Gross Arnold engaged in various actions on Plaintiffs' behalf but without

authority to do so.  *See id*. at 10.

Plaintiffs allege that Thayer, Gross Arnold, Marchiol, IMC, Krasnerman and MK acted

as agents of each other and received large commissions and compensation upon the sale of the

policies.  Plaintiffs relied on Third Party Defendants' representations that they would profit soon

"if they just hang in there," and they allege that Krasnerman and MK were acting as agents of

those defendants who made said representations.  *Id*. at 11.  Plaintiffs represent that the

insurance scheme was doomed from the start; Third Party Defendants made no efforts to sell the

policies as promised and indeed the policies were always incapable of being sold.  Plaintiffs

allege that Third Party Defendants' failure to sell the policies as promised resulted in Plaintiffs'

inability to develop their oil and gas leases.  Austin Crude has consequently suffered financial

loss in the millions of dollars.

With specific regard to Defendants in the instant Motion, Plaintiffs allege as follows:

Krasnerman is president and secretary of MK and is also president of Plaintiff Dinero; MK and

Dinero are Krasnerman's mere alter egos; Krasnerman has at relevant times been a licensed

insurance agent in New Mexico and he participated in a predatory life insurance sale and

premium financing scheme involving Plaintiffs; and Krasnerman and MK received substantial

compensation from commissions earned on Plaintiffs' policies.  Plaintiffs allege that MK used

5

an agreement titled "Single Case Agreement" to profit from a predatory life insurance sale and premium financing scheme at Plaintiffs' expense, receiving commissions in excess of $1.4 million to date.  *See* Doc. 48, Ex. B.  According to Plaintiffs, Krasnerman under the guise of his alter ego MK entered an agreement with Gross Arnold to obtain a premium finance loan to pay the initial premiums for the policies.  Plaintiffs further allege that at all relevant times, all third party defendants acted as each other's agents.  They allege that the individual plaintiffs were senior citizens who relied on Third Party Defendants' representations and assurances that if they participated in the transaction that has given rise to this lawsuit, Austin Crude would receive between $2.4 and 16 million dollars.

## DISCUSSION

Only Third Party Defendants Krasnerman and MK, hereafter collectively referred to as "Defendants," filed the instant Motion to Dismiss.  Generally, Defendants argue that Plaintiffs have failed to state a claim upon which relief can be granted, as they have failed to allege specific facts supporting a legally cognizable theory of liability as to Krasnerman and MK.

## I.      Allegations that MK Is Krasnerman's "Mere Alter Ego"

Defendants argue that under principles of limited liability for corporate officers and directors, Plaintiffs have failed to allege sufficient facts to hold Krasnerman liable for any of MK's alleged actions.  The Court agrees that whereas Plaintiffs have alleged in a conclusory fashion that MK is Krasnerman's mere alter ego and Krasnerman should accordingly be personally liable, they have failed to plead facts that would support such an allegation.  As set forth below, by means of the instant Memorandum Opinion and Order, the Court dismisses the majority of Plaintiffs' claims with leave to amend.  Plaintiffs shall additionally amend their Complaint to include specific allegations supporting their contention that Krasnerman should be

6

held liable for the actions of his corporation.

## II.     Allegations of Agency Relationship

Plaintiffs do not allege any direct dealings between themselves and MK and/or
Krasnerman.  Much of Plaintiffs' Complaint against these two defendants hinges upon their
allegation that "at all relevant times," all third party defendants acted as each others' agents.  *See*
Doc. 48 at 11, 12, 13, & 14.

An agent is one authorized by another to act on his behalf and under his control, or under
another's apparent authority.  *Gallegos v. Citizens Ins. Agency*, 779 P.2d 99, 106 (N.M. 1989).
The principal's responsibility for the agent's acts is a "central feature of an agency relationship."
*Hydro Resources Corp. v. Gray*, 173 P.3d 749, 760 (N.M. 2007).  Given these definitions,
plaintiffs have pled insufficient facts to allege an agency relationship with respect to Krasnerman
and/or MK and the remaining third party defendants.  As summarized above, Plaintiffs allege
that Krasnerman and MK "made arrangements"with Gross Arnold and Thayer, yet they provide
no detail regarding the nature of these arrangements.  *Id*. at 8.  In their Reply to Defendants'
Response, they state in a conclusory fashion that "[w]ell established principles of agency law
apply herein," yet again they fail to explain what facts would support the existence of an agency
relationship.  Doc. 57 at 17.

Plaintiffs attach a document titled "Single Case Agreement" to their Complaint, which
includes signature lines for Krasnerman (acting as president of MK) and an individual named
Ken Marchiol (acting as president of IMC).  Doc. 49, Ex. B.  The agreement provides that
Krasnerman will receive commissions on the sales of Plaintiffs' insurance policies in amounts
totaling over one million dollars.  Whereas Mr. Marchiol's signature appears on the document,
Krasnerman's signature line remains blank.  Although Defendants make much of the unsigned

nature of the agreement, they admit in their Motion that MK indeed entered the agreement "months after" Plaintiffs entered the insurance transactions.  Doc. 52 at 6.

III.    **Leave to Amend**

The allegations and exhibit described above fail to "nudge [Plaintiffs'] claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  However, the Court acknowledges Plaintiffs' contention that "the details of the scheme to deceive [Plaintiffs] into purchasing life insurance policies, including the dates when the personnel necessary to carry out the scheme became involved, are peculiarly within the possession and control of the third party defendants."  Doc. 57 at 7.  Moreover, the unsigned agreement combined with Defendants' admission are adequate evidence at the Rule 12(b)(6) stage that MK and/or Krasnerman may have entered a revised agreement with Mr. Marchiol, but it is unlikely that Plaintiffs would have access to a copy of such an agreement prior to the commencement of the discovery process.  It would be unjust to dismiss Plaintiffs' Complaint for failure to allege sufficient facts to establish an agency relationship, given their contention at the time of filing that they did not have access to the information necessary to more specifically plead their claims.

Under the Federal Rules of Civil Procedure, "[t]he court should freely give leave [to amend a pleading] when justice so requires."  FED. R. CIV. P. 15(a)(2).  "If it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend."  6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1483 (3d ed. 2010).  "[D]istrict courts may withhold leave to amend only for reasons such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of

allowance of the amendment, [or] futility of [the] amendment.'" *U.S. ex. rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1166 (10th Cir. 2009) (quoting *Foman v. Davis*, 371 U.S. 178 (1962)).

As set forth below, the Court has divided Plaintiffs' claims into two categories: those whose success at the Rule 12(b)(6) stage hinges upon a more detailed pleading of the alleged agency relationship, and those that may be decided without such additional pleadings and/or require leave to amend on other bases. The Court will accordingly dismiss those of Plaintiffs' claims that require a stronger establishment of the agency relationship between MK and/or Krasnerman and the other third party defendants, but shall grant leave to amend the Complaint to meet the requirements of *Twombly* and Federal Rule of Civil Procedure 8(b) that the Complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

## IV.     Claims Dependent Upon Agency Relationship

### A.     Count I: Breach of Contract

Plaintiffs allege that Third Party Defendants promised them that upon purchase of four $20 million insurance policies on Austin Crude's members' lives, the policies would promptly be sold and Austin Crude would receive three percent of the policies' face value, or $2,400,000. Plaintiffs allege that the promises were supported by consideration. According to Plaintiffs, Third Party Defendants then promised them – and subsequently breached their promise – that upon expiration of the two-year incontestability periods on their respective life insurance policies, Austin Crude would receive between $14,400,000 and $16,000,000.

Defendants Krasnerman and MK argue that Plaintiffs have failed to allege any specific promises made by these particular defendants, and have accordingly failed to plead sufficient facts that would establish the existence of a contract. They further argue that the alleged contract

9

– whose existence they dispute – falls within New Mexico's statute of frauds as it could not have been performed within one year.

Plaintiffs respond that a contract indeed existed and Defendants are responsible under general theories of agency and conspiracy.  Plaintiffs state that allegations "that a contract was made by one party for itself and an undisclosed principal, and breach of that contract," are sufficient.  Doc. 57 at 11.  They further argue that the contract "could and should have been fully performed in a year," and it accordingly falls outside the statute of frauds.  *Id*.  Moreover, Third Party Defendants' acceptance and retention of benefits constitute part performance, which brings the contract outside the statute of frauds.

To allege a claim of breach of contract, Plaintiffs must establish the existence of a contract, breach thereof, causation, and damages.  *Camino Real Mobile Home Park Partnership v. Wolfe*, 891 P.2d 1190, 1199 (N.M. 1995).  To prove the existence of an enforceable contract, Plaintiffs must point to an agreement supported by an offer, acceptance, consideration, and mutual assent.  *Nance v. L.J. Dolloff Associates, Inc.*, 126 P.3d 1215, 1220 (N.M. Ct. App. 2005).  Whereas Plaintiffs have alleged such elements with respect to Third Party Defendants Thayer and Gross Arnold, Plaintiffs' allegations that Krasnerman "made arrangements" with Gross Arnold to engage in a business transaction are insufficient to allege a contract with respect to these two defendants.  Moreover, certain aspects of Plaintiffs' allegation of breach of contract constitute "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which are insufficient under *Twombly*.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  For example, Plaintiffs simply allege that the contract was supported by consideration and that Third Party Defendants breached the contract, without explaining what specific actions constituted the consideration and/or breach.  Plaintiffs' breach of contract claim

10

must accordingly be dismissed, but the Court will grant Plaintiffs leave to amend to properly allege facts that would entitle them to relief if proven.

### B.      Count II: Breach of Covenant of Good Faith and Fair Dealing

Plaintiffs allege that Third Party Defendants owed them a duty of good faith and fair dealing in their contractual relationship and general course of dealings, and that they breached this duty by acting dishonestly.  Specifically, Plaintiffs allege that Third Party Defendants: failed to acquire a buyer for Plaintiffs' insurance policies; failed to monitor the market for Austin Crude's intended sale; failed to advise Plaintiffs that market conditions made it unlikely that Austin Crude's policies could be sold at a profit or at all; did not advise Plaintiffs that Austin Crude should cancel the policies; and placed their own financial interests above Plaintiffs' when it was apparent that the market for the sale of the life insurance policies had vanished. Defendants argue that because no contract existed between Plaintiffs and MK and/or Krasnerman, Defendants were under no duty of good faith and fair dealings.

To allege a claim of breach of the covenant of good faith and fair dealing, Plaintiffs must first establish that they entered a contract with Third Party Defendants.  *See Salas v. Mountain States Mut. Cas. Co.*, 202 P.3d 801, 805 (N.M. 2009) ("[E]very contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement.  Broadly stated, the covenant requires that neither party do anything which will deprive the other of the benefits of the agreement.") (citation omitted).  Plaintiffs' allegations that Third Party Defendants misled Plaintiffs regarding the relevant market conditions, accepted payment for insurance policies and then failed to comply with their duties under the agreement to invest such payments, and continued to receive commissions and fees at Plaintiffs' expense, are sufficient to state a claim against the parties with whom Plaintiffs actually engaged in business dealings.  However, the

allegations will be insufficient as to MK and Krasnerman unless Plaintiffs can amend their complaint to sufficiently allege the existence of an agency relationship.

### C.      Count IV: Negligence

Plaintiffs allege that Third Party Defendants, acting for themselves and as agents for one another, were negligent in their administration of professional services for Plaintiffs' purported benefit.  They allege that Third Party Defendants breached their duty of care to Plaintiffs by failing to appropriately advise them, monitor the market, and act only with proper authority.

Defendants argue that Plaintiffs have failed to allege facts establishing any relationship or prior communications between them and Krasnerman and/or MK.  Accordingly, they owed Plaintiffs no duty of care.  Plaintiffs respond that the allegation concerns a *failure* to communicate the risks involved, and Defendants' lack of prior communications should not be dispositive.

"The elements of a negligence claim are (1) the existence of a duty running from the defendant to the plaintiff; (2) a breach of that duty based on a reasonable care standard; and (3) the breach of duty is both the proximate and in-fact cause of the plaintiff's damages."  *Ross v. City of Las Cruces*, 229 P.3d 1253, 1256 (N.M. Ct. App. 2009).  Insurance agents owe their clients a duty of care "independent of any duties or obligations arising out of the contract of insurance."  *Cottonwood Enterprises v. McAlpin*, 810 P.2d 812, 815 (N.M. 1991).  Plaintiffs' allegations that the agents with whom they dealt directly failed to advise them of the inherently risky nature of the transactions they encouraged them to enter, and their subsequent failure to monitor the market and communicate to Plaintiffs that the purchases were not profiting as they had originally represented, sufficiently alleges a breach of this duty of care.  Plaintiffs' allegations of their life insurance policy purchases and subsequent lack of expected profit are

sufficient to plead the damages element of negligence, and the allegations of Third Party

Defendants' misrepresentations and inaction are sufficient to plead causation.  However, without

more specific allegations of an agency relationship, these pleadings are presently sufficient only

with respect to the individuals and entities with whom Plaintiffs directly engaged in business, not

MK or Krasnerman.

### D.      Count V: Negligent Misrepresentation

Plaintiffs allege that Third Party Defendants made various misrepresentations in their

course of dealings with Plaintiffs.  They argue that Third Party Defendants negligently failed to

determine the truth or falsity of their representations to Plaintiffs.  Defendants argue that

Plaintiffs have failed to allege facts establishing any relationship or prior communications

between them and Krasnerman and/or MK.  Accordingly, they made no material

misrepresentation to Plaintiffs.

A claim of negligent misrepresentation requires the following allegations: "(1)

Defendants made a material misrepresentation of fact to Plaintiff[s], (2) Plaintiff[s] relied upon

such representation, (3) Defendants knew the representation was false at the time it was made or

made the representation recklessly, and (4) Defendants intended to induce Plaintiff[s] to rely on

such representation." *Healthsource, Inc. v. X-Ray Associates of New Mexico*, 116 P.3d 861, 870

(N.M. Ct. App. 2005).  Plaintiffs must also show that Third Party Defendants owed them a duty

to disclose information.  *Barrington Reinsurance Ltd. v. Fidelity Natl. Title Ins. Co.*, 172 P.3d

168, 172 (N.M. Ct. App. 2007).  In New Mexico, both parties to an insurance contract must

"provide material and accurate information to the other before the sale of the insurance policy."

*Azar v. Prudential Ins. Co. of America*, 68 P.3d 909, 927 (N.M. Ct. App. 2003) (citing *Modisette*

*v. Foundation Reserve Insurance Co.*, 427 P.2d 21, 25 (N.M. 1967)).

13

The Court has doubts that Plaintiffs can allege facts that would confer a duty upon MK and/or Krasnerman to disclose information to Plaintiffs under principles of agency law. Plaintiffs have alleged no facts that would suggest that MK and/or Krasnerman owed them any duty at the time Plaintiffs entered into the insurance transactions. However, depending on the specific allegations of a principal-agent relationship, Plaintiffs may be able to sufficiently allege that Defendants' dealings with other third party defendants gave rise to a duty to disclose information at some point after the transactions were entered. If Plaintiffs can sufficiently allege this agency relationship existed at a time when Thayer and/or Gross Arnold made misrepresentations to Plaintiffs, they may survive the instant Motion to Dismiss with respect to their negligent misrepresentation claim.

### E.      Count VII: Unfair Trade & Insurance Practices

Plaintiffs allege that Third Party Defendants conducted themselves in violation of New Mexico's Unfair Trade Practices Act, N.M. STAT. ANN. §§ 57-12-1 *et seq.*, and Unfair Insurance Practices Act, N.M. STAT. ANN. §§ 59A-16-1 *et seq.* (hereafter referred to as "Unfair Practices Acts" or "UPA"). Specifically, Plaintiffs allege that Third Party Defendants "took advantage of the lack of knowledge and experience of third party plaintiffs, [resulting] in a gross disparity between the value received by Austin Crude and the price paid . . ." Doc. 48 at 23. This conduct constituted unfair or deceptive trade practices, unconscionable trade practices, unfair and deceptive acts or practices with regard to the sale of insurance and premium financing, and "twisting" as defined by the Unfair Practices Acts.

Defendants again point to their lack of dealings with Plaintiffs and accordingly argue that Plaintiffs have failed to make the required showing under the UPA that Defendants made a false or misleading representation. Plaintiffs respond that under the UPA, a direct representation is

not required; rather, they must allege a representation or deliberate concealment made "in connection with" a transaction.  Doc. 57 at 16.  They further argue that their allegations that Third Party Defendants were acting as Krasnerman and MK's agents bring Defendants within the UPA.

The UPA defines an unfair or deceptive trade practice as "a false or misleading oral or written statement . . . made in connection with the sale . . . of goods or services . . . by a person in the regular course of his trade or commerce that may, tends to or does deceive or mislead any person[.]"  N.M. STAT. ANN § 57-12-2(D).  An unconscionable trade practice is "an act or practice in connection with the sale . . . of any goods or services, including services provided by licensed professionals [that] (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid."  N.M. STAT. ANN § 57-12-2(E).  The UPA is remedial legislation and should accordingly be construed liberally.  *Lohman v. Daimler-Chrysler Corp.*, 166 P.3d 1091, 1097 (N.M. Ct. App. 2007).  The Acts do not require that the plaintiff and defendant engaged in a direct transaction.  *Id.*

Here, Plaintiffs have alleged that Gross Arnold and Thayer, and possibly other third party defendants under an agency theory, deceived them and took advantage of their lack of knowledge by inducing them into entering unstable insurance transactions to their detriment, and to Third Party Defendants' benefit.  In order to state a cause of action under the UPA against Krasnerman and MK, Plaintiffs must allege sufficient facts to support the existence of an agency relationship at the time that the other third party defendants allegedly engaged in this conduct.

**F.     Count XI: Promissory Estoppel**

Plaintiffs allege that Third Party Defendants promised that Plaintiffs would receive value

15

in exchange for their purchase of the life insurance policies, and Plaintiffs reasonably and foreseeably relied on these promises.  Defendants again argue that these alleged promises were made by the insurance agents, not by MK or Krasnerman.  As with the other claims listed above, the Court finds that Plaintiffs have adequately pled this claim with respect to the third party defendants with whom Plaintiffs actually engaged in business dealings.  Yet additional allegations of a principal-agent relationship between these defendants and MK and/or Krasnerman are necessary to survive the instant Motion to Dismiss.

### G.    Conclusion

As explained above, Plaintiffs have alleged insufficient facts to establish that MK and/or Krasnerman acted as agents of any of the third party defendants with whom Plaintiffs dealt directly.  Plaintiffs' claims for breach of contract, breach of the implied covenant of good faith and fair dealing, negligence, negligent misrepresentation, violation of the Unfair Practices Acts, and promissory estoppel are accordingly dismissed as to Defendants MK and Krasnerman.  The Court will grant Plaintiffs leave to amend their complaint so as to sufficiently plead these claims with respect to MK and Krasnerman.  If, at the time of filing the amended complaint, Plaintiffs still lack sufficient information to adequately plead their claims due to this information remaining solely in the possession of Third Party Defendants, they are instructed to explain what they expect to learn from discovery, as well as what they have already learned in the state court discovery process, with respect to this alleged agency relationship.

## V.    Plaintiffs' Remaining Claims

### A.    Count III: Breach of Fiduciary Duties

Plaintiffs allege that Third Party Defendants undertook business transactions on Plaintiffs' behalf and accordingly owed them fiduciary duties "as licensed insurance agents and

16

brokers, or otherwise." Doc. 48 at 16. Plaintiffs further allege that Third Party Defendants breached said duties. The allegations of breach center around Third Party Defendants' alleged failure to advise Plaintiffs of certain risks or market conditions at the time the life insurance policies were purchased and thereafter, as well as various alleged failures to monitor the market and take action to protect Plaintiffs from economic loss.

Defendants argue that the Complaint fails to allege any relationship whatsoever with respect to MK and/or Krasnerman. They argue that to the extent the Complaint makes specific allegations of wrongdoing, they are aimed at the insurance agents who provided the allegedly faulty advice. Defendants argue that because they never entered any relationship with Plaintiffs, no fiduciary duty attached. Plaintiffs respond as follows:

> The third party complaint, after alleging the knowledge of Krasnerman and MK Associates, Inc. in the field of insurance matters, including premium financing, asserts specific grounds for the finding that both Michael Krasnerman, a licensed New Mexico insurance agent receiving commissions on the sale of the subject life insurance policies through his MK Associates, Inc., and MK Associates, Inc. directly, possessed a fiduciary duty to third party plaintiffs and that they each breached such duties related to the insurance scheme.

Doc. 57 at 12 (citing Doc. 48 at ¶¶ 68-69).

To establish a fiduciary relationship, Plaintiffs must show that they placed "a special confidence . . . in [Third Party Defendants,] who in equity and good conscience [were] bound to act in good faith and with due regard to [Plaintiffs'] interests . . . ." *Branch v. Chamisa Development Corp. Ltd.*, 223 P.3d 942, 951 (N.M. Ct. App. 2009) (citation omitted). In order to find that Defendants owed Plaintiffs a fiduciary duty, the Court must find that the relationship between the parties was "one of trust and confidence." *Id.* (citation omitted). It would appear from Plaintiffs' reply that they referred specifically to Defendants MK and Krasnerman when they vaguely alleged that "third party defendants" who were "knowledgeable in the field of

17

insurance, life settlements and premium financing" owed them a fiduciary duty.  It would moreover appear that Plaintiffs have some basis to support their specific allegation that Krasnerman's alleged agreement with the insurance agent defendants provided him commissions on the sale of the subject life insurance policies.  Finally, Plaintiffs have specifically alleged that *all* third party defendants "induced [Plaintiffs'] trust."  Doc. 48 at 17.  However, even under the lenient Rule 12(b)(6) standard, Plaintiffs have alleged inadequate facts to "nudge [their] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, with respect to MK and Krasnerman.  The Court will therefore dismiss this claim but grant Plaintiffs leave to amend their complaint to adequately plead these allegations to "give the court reason to believe that [Plaintiffs have] a reasonable likelihood of mustering factual support for these claims."  *Ridge at Red Hawk*, 493 F.3d at 1177.

## B.      Count VI: Fraud, Constructive Fraud & Deceit

Plaintiffs first allege that third party defendants who are not parties to the instant motion – Thayer, Blueprint Financial Marketing, Gross Arnold (in her individual capacity as well as her capacity as employee of Marchiol and IMC) – made material false statements to induce Plaintiffs into entering the insurance transactions.  They next allege that Krasnerman (and his alter ego Dinero), along with his agents IMC, Marchiol and Gross Arnold, purported to enter into a legitimate finance transaction with Austin Crude and falsely represented the terms of said transaction.  Plaintiffs allege that Krasnerman made false and misleading statements to induce the transaction with full knowledge of the falsity of his statements.  Specifically, Krasnerman

> falsely represented that the terms of the transaction would be reasonable and fair in
> the specialized area of insurance premium financing, an area about with third party
> plaintiffs knew little or nothing; and that [Plaintiffs would not] bear personal liability
> for the purported premium financing loan, when the true purpose was to impose a
> contract of adhesion on [Plaintiffs] containing terms, including an interest rate, so

onerous as to make repayment of the loan . . . impractical or impossible . . . at the outset[.]

Doc. 48 at 22.

Defendants argue that Plaintiffs have failed to meet the requirements of Federal Rule of Civil Procedure 9, which provides that fraud must be pled with particularity.  Plaintiffs have failed to set forth the time, place or contents of the alleged false representation(s), but rather make only vague and conclusory references.

Plaintiffs respond that the Complaint alleges circumstances giving rise to a fiduciary duty, identifies the material information that Defendants failed to disclose, and "provides as much detail regarding the various conspirators['] roles in the scheme as is available absent complete discovery from [Defendants, who have] possession and control of that information." Doc. 57 at 14.  In other words, Plaintiffs allege that Krasnerman and MK were conspirators and acted as principals with respect to the statements and nondisclosures of the other third party defendants, but without access to discovery they are unable to plead more specific facts. Plaintiffs further respond that the Complaint does, in fact, specifically identify Krasnerman and his agents' affirmative misrepresentations.  The Court will assume that Plaintiffs are referring to the following allegation:

> Krasnerman . . . through his statements and the statements of others employed by or acting on behalf of Dinero Corp., falsely represented that the terms of the transaction would be reasonable and fair in the specialized area of insurance premium financing, an area about which third party plaintiffs knew little or nothing; and that neither Austin Crude nor its individual members would bear personal liability for the purported premium finance loan, when the true purpose was to impose a contract of adhesion on Austin Crude and its members containing terms, including an interest rate, so onerous as to make repayment of the loan from the promised secondary sale of the life insurance policies impractical or impossible of fulfillment at the outset, to the third party defendants' advantage and third party plaintiffs' detriment.

Doc. 48 at 21-22.

19

The elements of fraud are: "(1) a misrepresentation of fact, (2) either knowledge of the falsity of the representation or recklessness on the part of the party making the misrepresentation, (3) intent to deceive and to induce reliance on the misrepresentation, and (4) detrimental reliance on the misrepresentation." *Cain v. Champion Window Co. of Albuquerque, LLC*, 164 P.3d 90, 97 (N.M. Ct. App. 2007). The Federal Rules of Civil Procedure require that the circumstances constituting the alleged fraud be pled with particularity. Fed. R. Civ. P. 9(b). The Tenth Circuit has held that an allegation of fraud must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006). "Though *Twombly* and *Iqbal* clarified [Rule] 9(b)'s requirements, the Rule's purpose remains unaltered. Namely, to afford defendant fair notice of plaintiff's claims and the factual ground upon which they are based." *U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1172 (10th Cir. 2010) (quotations and alterations omitted).

The portion of the Complaint excerpted above goes beyond conclusory references and places Defendants on "fair notice" of the *content* of the alleged fraud. However, absent from Plaintiffs' allegations is any estimate of the time or place that the alleged fraud occurred, nor does the Complaint specify the identity of the person or entity making the misrepresentations. Plaintiffs allege that they are unable to plead their claims of fraud with more specificity because the information necessary to do so is in Third Party Defendants' sole possession. Although such circumstances are feasible with respect to the precise roles of the various alleged conspirators, the Court finds it implausible that Plaintiffs cannot set forth the identity of the speaker or an estimated time and place of the alleged false representations, at least with respect to the parties with whom Plaintiffs engaged directly.

20

For this reason, Plaintiffs' claim of fraud shall be dismissed but the Court will grant them leave to amend their Complaint so as to comply with Federal Rule of Civil Procedure 9(b).  The Court also notes that depending on the specificity with which Plaintiffs can allege fraud with respect to MK and/or Krasnerman, the success of this claim at the Rule 12(b)(6) stage may hinge on Plaintiffs' ability to adequately plead a principal-agent relationship between MK and/or Krasnerman and the remaining third party defendants.

### C.      Count VIII: Civil Conspiracy

Plaintiffs allege that Third Party Defendants conspired to induce Plaintiffs to purchase life insurance policies by fraudulent means and by means of duress, and to facilitate a scheme that would create millions of dollars in commissions, fees and interest for Third Party Defendants.  Defendants argue that Plaintiffs have inadequately pled conspiracy via conclusory allegations, as they have not alleged a specific agreement to commit wrongful acts nor actions from which a conspiracy may be inferred.

A claim of civil conspiracy requires allegations "(1) that a conspiracy between two or more individuals existed; (2) that specific wrongful acts were carried out by the defendants pursuant to the conspiracy; and (3) that the plaintiff was damaged as a result of such acts." *Silva v. Town of Springer*, 912 P.2d 304, 210 (N.M. Ct. App. 1996).  As an unlawful agreement is a necessary element to prove conspiracy, Defendants argue that Plaintiffs' conspiracy claim should be dismissed as they have alleged no specific facts regarding such an agreement.

Absent discovery or other means of accessing information regarding Third Party Defendants' dealings in which Plaintiffs were not involved, it is not surprising that Plaintiffs are unable to allege the specific circumstances of an alleged agreement between Third Party Defendants.  *See Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1128 (10th Cir. 1994) ("the

21

nature of conspiracies often makes it impossible to provide details at the pleading stage")
(citation omitted).  "A conspiracy may be established by circumstantial evidence; generally, the
agreement is a matter of inference from the facts and circumstances, including the acts of the
persons alleged to be conspirators."  *Santa Fe Technologies, Inc. v. Argus Networks, Inc.*, 42
P.3d 1221, 1236 (N.M. Ct. App. 2001).  In *Twombly*, the Supreme Court analyzed the
requirements of pleading conspiracy at the Rule 12(b)(6) stage, which although pertaining
specifically to the sufficiency of a complaint alleging conspiracy under the Sherman Act, are
instructive in the instant case.  There, the Court stated:

> [S]tating [a claim for conspiracy under the Sherman Act] requires a complaint with
> enough factual matter (taken as true) to suggest that an agreement was made.  Asking
> for plausible grounds to infer an agreement does not impose a probability
> requirement at the pleading stage; it simply calls for enough fact[s] to raise a
> reasonable expectation that discovery will reveal evidence of illegal agreement.

*Twombly*, 550 U.S. at 556.

In the instant case, Plaintiffs allege that Third Party Defendants "colluded and conspired
to induce" Plaintiffs to purchase the life insurance policies.  Doc. 48 at 24.  They further allege
that Third Party Defendants conspired to violate the UPA and further conspired to "specifically
fund[] the purchase and premium financing of the life settlement policies, and thereafter . . .
create and enforce personal liability" on Plaintiffs.  *Id*. at 24-25.  This scheme was allegedly
designed "to pursue, receive and create millions of dollars in commissions, fees, and interest and
up to $80 million in death benefits."  *Id*. at 25.  Particularly given the fact that "the agreement is
a matter of inference" under New Mexico law, *see Santa Fe Technologies*, 42 P.3d at 1236, these
allegations constitute "enough factual matter (taken as true) to suggest that an agreement was
made."  *See Twombly*, 550 U.S. at 556.  The Court will therefore deny Defendants' Motion to
Dismiss as to Plaintiffs' civil conspiracy claim.

**D.      Counts IX & X: Unjust Enrichment, Imposition of Constructive Trust and Disgorgement**

Plaintiffs allege that they conferred benefits on each of the third party defendants "by paying or incurring insurance policy premiums and purported and alleged origination, interest and finance charges for which Defendants received fees and commissions in amounts presently unknown[.]" Doc. 48 at 25.  Plaintiffs further allege that Third Party Defendants have retained these benefits without compensating Plaintiffs.  Alleging that Third Party Defendants "have collected, and are believed to be continuing to collect" benefits from the life insurance policies, and may make claim to further benefits, Plaintiffs allege that no adequate remedy at law allows for the recovery of these benefits.  Doc. 48 at 26.  Accordingly, Plaintiffs state that recovery under a theory of unjust enrichment, as well as imposition of a constructive trust, would be appropriate remedies.  Plaintiffs argue that Defendants' denial of the existence of a contract demonstrates that equitable remedies would be appropriate, as such remedies must be sought when contract law provides none.

Defendants argue that Plaintiffs have failed to allege that MK or Krasnerman ever received any money from Plaintiffs, and as such, cannot allege that they have been unjustly enriched.  Similarly, Defendants argue that there is no basis to impose either remedy of constructive trust or disgorgement, as they have not received benefits at Plaintiffs' expense. They argue that Austin Crude received a $12 million loan which Plaintiffs have not repaid, leaving no basis to find that Defendants have benefitted.

Plaintiffs respond that they adequately pled unjust enrichment in that they alleged that Third Party Defendants knowingly benefitted at Third Party Plaintiffs' expense.  Plaintiffs further made "factual allegations respecting the scheme, in which Krasnerman and MK were

23

voluntary participants, and by which Third Party Defendants were misled into obtaining and becoming indebted for policies that would not serve their needs, so that these Third Party Defendants could profit."  Doc. 57 at 21.  Plaintiffs state that "commissions continue to be payable to the agents and brokers" and "a death benefit may unfortunately become payable during pendency herein."  Doc. 57 at 21.

Defendants' argument that Plaintiffs' claim fails because they have not alleged that Defendants received money from Plaintiffs, improperly suggests that such direct receipt of money is required under a theory of unjust enrichment.  To the contrary, a claim of unjust enrichment requires proof that Defendants benefitted at Plaintiffs' expense, but Plaintiffs need not prove that they directly engaged in any dealings with Defendants.  *See Ontiveros Insulation Co., Inc. v. Sanchez*, 3 P.3d 695, 698 (N.M. Ct. App. 2000) (listing elements of unjust enrichment claim as "(1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust").  Indeed, the theory of unjust enrichment is distinctly appropriate in cases where the existence of a contract cannot be proven, yet justice demands that equity impose a contractual relationship between the parties.  *Arena Resources, Inc. v. Obo, Inc.*, 238 P.3d 357, 360-61 (N.M. Ct. App. 2010).

Although Defendants are correct to point out that Plaintiffs received valuable insurance policies for which they have not paid, they do not dispute Plaintiffs' allegations that they themselves received and continue to receive commissions and interest at Plaintiffs' expense.  At this stage in the litigation, it is impossible to know whether, if Defendants have unjustly benefitted at Plaintiffs' expense, a remedy in contract law or equity is appropriate.  The Court will accordingly deny Defendants' Motion to Dismiss as to Plaintiffs' claims of unjust enrichment, constructive trust, and disgorgement.

**CONCLUSION**

Based on the foregoing analysis, **IT IS HEREBY ORDERED** that Third Party Defendants Michael Krasnerman and MK Associates' Motion to Dismiss [Doc. 52] is **GRANTED** as to **Count I** (breach of contract), **Count II** (breach of covenant of good faith and fair dealing), **Count III** (breach of fiduciary duties), **Count IV** (negligence), **Count V** (negligent misrepresentation), **Count VI** (fraud, constructive fraud and deceit), **Count VII** (unfair trade and insurance practices), and **Count XI** (promissory estoppel) of the Third Party Complaint [Doc. 48]. The Court **FURTHER ORDERS** that Third Party Plaintiffs shall have **sixty (60) days** from entry of this order to amend their Third Party Complaint as to these claims, as instructed in Sections I, IV and V, *supra*.

**IT IS FURTHER ORDERED** that Third Party Defendants Michael Krasnerman and MK Associates' Motion to Dismiss [Doc. 52] is **DENIED** as to **Count VII** (civil conspiracy), **Count IX** (unjust enrichment), and **Count X** (imposition of constructive trust and/or disgorgement) of the Third Party Complaint [Doc. 48].

Nothing in this Memorandum Opinion and Order should be construed as ruling in any manner on the Motions to Dismiss filed by the remaining third party defendants [Docs. 73–76]. DATED this 31st day of March, 2011.

_____
**MARTHA VÁZQUEZ**
United States District Judge

*Attorneys for Third Party Plaintiffs:*
K. Stephen Royce
Dale R. Rugge
James Douglas Green

*Attorney for Third Party Defendants:*
Ross L. Crown

25